1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DARYL LYONS,

11          Petitioner,              No. CIV S-03-1127 GEB DAD P

12      vs.

13   WARDEN KNOWLES,              ORDER AND

14          Respondent.           FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the failure of the Department

18   of Corrections to restore his loss of 360 days of behavioral credits imposed after a prison

19   disciplinary proceeding.  He also challenges a June 26, 2001 disciplinary decision finding him

20   guilty of assault upon a staff member without serious injury.  Upon careful consideration of the

21   record and the applicable law, the undersigned will recommend that petitioner's application for

22   habeas corpus relief be denied.

23                         BACKGROUND

24   I.  April 7, 2001 Rules Violation Report

25          On April 7, 2001, correctional officer Haynes wrote a rules violation report

26   charging petitioner with assault on an officer with a weapon and use of force.  (Answer, Ex. 3.)

1

1   On May 25, 2001, after a hearing, petitioner was found guilty of these charges and was assessed a

2   loss of 360 days of behavioral credits. (Answer, Ex. 4; document entitled "Attachment - A"

3   (hereinafter Attach.) at third "attachment B".) However, on June 14, 2001, the rules violation

4   report was ordered reissued and reheard "due to [petitioner] not being provided witnesses."

5   (Answer, Exs. 3, 4.) The reissued rules violation report reduced the charges against petitioner to

6   "delaying/resisting a peace officer." (Answer, Ex. 3.)[1]

7          A new disciplinary hearing on the reduced charges was held on August 2, 2001.

8   (Id.) Petitioner was found guilty and was assessed a loss of 90 days of behavioral credits. (Id.)

9   However, the loss of credits was subsequently nullified by the chief disciplinary officer because

10  petitioner was not served with a copy of the judgment in a timely manner. (Id.)

11         On April 23, 2002, petitioner filed an inmate appeal requesting restoration of the

12  360 days of behavioral credits imposed against him after the first disciplinary hearing. (Answer,

13  Ex. 4.) That appeal was denied because petitioner had not submitted the appeal in a timely

14  manner. (Answer, Ex. 5.) On June 11, 2002, petitioner filed an "Allegation of Misconduct by a

15  Peace Officer." (Answer, Ex. 6.) On June 13, 2002, this "appeal" was returned to petitioner

16  because it had not been submitted in a timely manner. (Answer, Ex. 7.)

17         Petitioner subsequently filed a petition for writ of habeas corpus in the Amador

18  County Superior Court, in which he alleged that the 360 day credit loss should have been

19  restored to him because "an Institutional Classification (ICC) Report, dated June 14, 2001,

20  vacated findings made in a disciplinary proceeding in which the petitioner was assessed a 360

21  day loss of credit." (Answer, Ex. 8.) Petitioner informed the Superior Court that he had attached

22  the findings of the ICC to the petition. (Id.) However, he attached to his petition only a copy of

23  the April 7, 2001 rules violation report. (Id.) The Superior Court concluded that "in the absence

24  /////

25  _____

26      [1] This reduction in the charge may have been influenced by the prison authorities'
    conclusion that petitioner's actions on April 7, 2001 were "influenced by mental illness." (Id.)

2

1   of the ICC report, the allegations of the petition are conclusory." (Id.)  For this reason, the

2   petition was denied.  (Id.)

3            Petitioner subsequently filed a petition for writ of habeas corpus in the California

4   Court of Appeal.  (Answer, Ex. 9.)  That petition was denied for failure to exhaust administrative

5   remedies.  (Id.)  After a search of state court records, respondent informs the court that petitioner

6   did not file a challenge in the California Supreme Court to the loss of credits imposed against

7   him after the first disciplinary hearing held on the April 7, 2001 rules violation report.  (Answer,

8   Ex. 10.)  Petitioner, however, has provided evidence to this court that he did challenge the 360-

9   day loss of credits in two petitions for a writ of habeas corpus filed in the California Supreme

10  Court.  (Traverse at 1 & Ex. D; Attach., third "attachment B.")  Those petitions were summarily

11  denied on April 30, 2003.  (Traverse at p. 1.)

12  II.  May 23, 2001 Rules Violation Report

13           On May 23, 2001, correctional officer Miller wrote a rules violation report

14  charging petitioner with "battery on a peace officer without serious injury" for throwing three

15  pills which hit officer Miller on his protective vest and upper leg.  (Answer, Ex. 11.)  On May 29,

16  2001, John Olson, a licensed clinical social worker, performed an assessment of petitioner's

17  mental health.  (Answer, Ex. 12.)  Olson determined that: (1) mental illness did not contribute to

18  petitioner's behavior on May 23, 2001; (2) petitioner did not have an impairment in his ability to

19  comprehend the nature of the charges against him or the disciplinary process; and (3) it appeared

20  that petitioner would benefit from staff assistance at the disciplinary hearing.  (Id.)

21           On June 12, 2001, petitioner was advised of his right to an investigative

22  employee, to request witnesses, to have the reporting employee and investigative employee

23  attend the disciplinary hearing, and to present evidence at the hearing.  (Answer, Ex. 13.)

24  Petitioner received the services of an investigative employee and a staff assistant.  (Answer, Ex.

25  11.)  Petitioner received the investigative employee's report on June 18, 2001.  (Id.)

26  /////

1    On June 26, 2001, the disciplinary hearing on the rules violation report was held.

2    (Id.)  At least twenty-four hours before the hearing, petitioner received copies of all reports

3    considered as evidence.  (Id.)  Petitioner testified at the hearing that he threw "the medication and

4    cup . . . to the side of the cell."  (Id.)  At petitioner's request, Officer Miller was called as a

5    witness.  (Id.)  Approximately forty minutes after the hearing commenced, petitioner stated that

6    "he refused to continue the hearing."  (Id.)

7    Petitioner was found guilty of the charge against him based on the rules violation

8    report, petitioner's partial admission that he threw the pills against the side of the cell, the

9    testimony of Officer Miller, and petitioner's mental health assessment.  (Id.)  Petitioner was

10   assessed a loss of 121 days of behavioral credits for this Division B offense.  (Id.)  There is no

11   mention in the record before this court of any testimony, or proposed testimony, at the

12   disciplinary hearing by inmate Jose Garcia.

13   Respondent admits that petitioner exhausted the administrative appeal process and

14   his state judicial remedies with respect to the May 23, 2001 rules violation report and resultant

15   disciplinary proceeding.  (Answer at 5.)

16                                         ANALYSIS

17   I.  Standards of Review Applicable to Habeas Corpus Claims

18   A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

19   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

20   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

21   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

22   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

23   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

24   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

25   (1972).

26   /////

4

1    This action is governed by the Antiterrorism and Effective Death Penalty Act of

2  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

3  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

4  habeas corpus relief:

5        An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall
6        not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the
7        claim -

8            (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
9        determined by the Supreme Court of the United States; or

10            (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
11        State court proceeding.

12  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

13  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

14    The court looks to the last reasoned state court decision as the basis for the state

15  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

16  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

17  federal habeas court independently reviews the record to determine whether habeas corpus relief

18  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

19  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

20  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

21  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

22  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

23  1167 (9th Cir. 2002).

24  II.  Exhaustion of State Court Remedies

25    As explained above, one of petitioner's claims in the petition pending before this

26  court is that the California Department of Corrections improperly failed to restore the loss of 360

1 days of behavioral credits assessed against him after the first disciplinary hearing on the April 7,

2 2001 rules violation report.  (Am. Pet. at 6.)  Respondent contends that petitioner's claim in this

3 regard is barred due to petitioner's failure to exhaust state court remedies.

4         The exhaustion of state court remedies is a prerequisite to the granting of a

5 petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion

6 requirement by providing the highest state court with a full and fair opportunity to consider each

7 of his claims before presenting them to the federal court.  O'Sullivan v. Boerckel, 526 U.S. 838,

8 844 (1999); Picard v. Connor, 404 U.S. 270, 276 (1971); see also Duncan v. Henry, 513 U.S.

9 364, 365 (1995); Lyons v. Crawford, 232 F.3d 666, 668 (2000), as modified by 247 F.3d 904 (9th

10 Cir. 2001).

11         Respondent has filed as an exhibit a printout of filings in the California Supreme

12 Court which he argues provides evidence that petitioner did not challenge his loss of 360 days in

13 time credits in that court.  (Answer, Ex. 10.)  However, as noted above, petitioner has provided

14 the court evidence that he did file two petitions for a writ of habeas corpus in the California

15 Supreme Court; one on July 30, 2002, and the other on September 6, 2002.  (Traverse, Ex. D;

16 Attach. at consecutive p. 2 and third "attachment B.")  Petitioner explains that the second of

17 these petitions is a supplement to the first petition, and the court notes that both petitions bear the

18 same case number.  (Traverse at 6.)  In the habeas petition filed in the California Supreme Court

19 on September 6, 2002, petitioner challenged the loss of the 360 days of behavioral credits.

20 (Attach., third "exhibit B.)  These petitions were summarily denied by order dated April 30,

21 2003.  (Attach., consecutive p. 1.)

22         It appears from the above-described documents that petitioner has exhausted his

23 state court remedies with respect to his claim before this court that his due process rights were

24 violated when the 360 days of behavioral credits were not restored to him after his first

25 disciplinary conviction on the April 7, 2001 rules violation report was vacated.  Even assuming

26 arguendo that petitioner failed to exhaust this claim in state court, for the reasons explained

1  below this court will recommend that habeas relief be denied on the merits.  See 28 U.S.C. §

2  2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits,

3  notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

4  State;" Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a

5  habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the

6  claim is not "colorable.")  Petitioner's claim in this regard is not colorable and should be denied.

7  III.  Procedural Bar

8          Respondent also argues that petitioner's failure to exhaust administrative remedies

9  constitutes a procedural default that, absent cause and prejudice, bars federal habeas relief with

10  respect to petitioner's claim challenging the 360 day credit loss.  As described above, petitioner

11  filed two inmate appeals challenging his loss of behavioral credits, which were denied on

12  timeliness grounds.  Petitioner subsequently filed a petition for writ of habeas corpus in the

13  Amador County Superior Court, which was denied because the petition was "conclusory."

14  (Answer, Ex. 8.)  Petitioner then filed a petition for writ of habeas corpus in the California Court

15  of Appeal, which was denied due to his failure to exhaust administrative remedies.  Petitioner

16  then filed two petitions for a writ of habeas corpus in the California Supreme Court, which were

17  summarily denied.  Respondent argues that the decision of the California Court of Appeal, in

18  which that court rejected the habeas petition for failure to exhaust administrative remedies,

19  constitutes a state procedural bar precluding review of petitioner's claims.

20          Petitioner informs the court that he filed timely administrative appeals pursuant to

21  prison rules and regulations.  (Traverse at 2-4.)  He explains that because he chose to file a

22  "citizens complaint for staff misconduct" and not a standard administrative appeal, his

23  administrative appeal came within an exception to the normal filing requirements.  (Id. at 3.)

24  Petitioner asserts that he had one year, as opposed to fifteen days, within which to file his

25  administrative challenges to the 360 day credit loss, and that his appeals were improperly

26  /////

1   rejected.  (Id.; October 14, 2005 "motion for judgment as a matter of law rule 50-291"

2   (hereinafter "motion for judgment") at 1-2.)

3          If a federal constitutional claim is expressly rejected by a state court on the basis

4   of a state procedural rule that is independent of the federal question and adequate to support the

5   judgment, the claim is procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 729-30

6   (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003).  Habeas review of procedurally

7   defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and

8   actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice.

9   Coleman, 501 U.S. at 750.

10         The California Court of Appeal did not cite any authority in its decision rejecting

11  petitioner's application for a writ of habeas corpus, merely stating that "[p]etitioner has failed to

12  exhaust his administrative remedies."  (Answer, Ex. 9.)  Respondent states that the decisions in

13  In re Dexter, 25 Cal.3d 921, 925 (1979) and In re Muszalski, 52 Cal.App.3d 500, 503 (1975)

14  require an inmate to exhaust administrative remedies before he may seek habeas corpus relief

15  from a state court.  (Answer at 8.)  Even assuming arguendo that the California Court of Appeal

16  intended to rely on the decisions in Dexter and Muszalski in support of its decision rejecting

17  petitioner's habeas petition, respondent's argument should be rejected.  Respondent has cited no

18  federal cases in support of his procedural default defense, nor has he met his burden of showing

19  that Dexter and Muszalski are adequate to bar federal review.  See Bennett, 322 F.3d at 585-86

20  (respondents bear the burden of proof with respect to the "adequacy" of a state procedural bar).

21         In any event, a reviewing court need not invariably resolve the question of

22  procedural default prior to ruling on the merits of a claim where the default issue turns on

23  difficult questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also

24  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("appeals courts are empowered to, and

25  in some cases should, reach the merits of habeas petitions if they are, on their face and without

26  regard to any facts that could be developed below, clearly not meritorious despite an asserted

8

1   procedural bar"); <u>Busby v. Dretke</u>, 359 F.3d 708, 720 (5th Cir. 2004).  Under the circumstances

2   presented here, the court finds that petitioner's claim can be resolved more easily by addressing it

3   on the merits.  Accordingly, this court will assume that petitioner's claim is not procedurally

4   defaulted and will address it on the merits.

5   IV.  <u>Petitioner's Claims</u>

6          A.  <u>April 7, 2001 Rules Violation Report</u>

7                  Petitioner claims that the California Department of Corrections improperly failed

8   to restore his loss of 360 days of behavioral credits imposed after the first disciplinary hearing on

9   the April 7, 2001 rules violation report.  He asserts that, as a result, his minimum eligible release

10  date has been miscalculated.  Petitioner explains his reasoning as follows:

11              On 4-23-02, I submitted my citizens complaint for staff misconduct
            requesting that the 360 days credit lost be deleted as ordered by the
12          Warden (AW) on 8-02-01, upon reissue rehearing.  (See Exhibit -
            A).  The institution denied my right to file the citizens complaint
13          because deceitly (sic) it was never restored as ordered.  On 6-26-
            01, the 360 work credit lost was recorded and assessed given me a
14          earliest possible release date (EPRD) of 12-23-06.  On 9-14-01, it
            was deleted reflecting a (EPRD) at 10-26-2006.
15
            This EPRD, is incorrect.  Because the credit loss was assessed at
16          D1 status, i.e. noncredit earning status meant that all 360 days was
            to be restored.  Wherefore, if my (EPRD) was 12-23-06, after the
17          360 days was assessed my (EPRD), should have reflected 12-28-
            05, after its deletion.  Even keeping with the fact on 6-26-01 and
18          on 7-24-01 I received a work credit loss of 30 and 90 days equaling
            120 days total would have meant that instead of getting the total
19          360 days back it would have been minus the 120 days giving me
            back credit of 240 days i.e., eight months.  My (EPRD) should
20          reflect 4-23-06 and not 10-23-06  (See Exhibit B).

21          On 10-11-01, I received a legal status summary type D, reflection
            (sic) work credit gain i.e. restoration of my credit.  I received this
22          computation one month after the 360 days was to be restored and it
            reflects that only 13 days was restored giving me the same
23          computed EPRD of 10-23-06.  (See Exhibit C).

24  (Traverse at 4-5.)

25                  The Due Process Clause of the Fourteenth Amendment prohibits state action that

26  deprives a person of life, liberty, or property without due process of law.  A person alleging a

1  violation of the right to due process must establish that he was deprived of an interest cognizable

2  under the Due Process Clause and that the procedures attendant upon that deprivation were not

3  constitutionally sufficient.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-

4  60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  A protected liberty interest may

5  arise under either the due process clause itself or a state statute or regulation.  Kentucky Dep't of

6  Corrections v. Thompson, 490 U.S. 454, 460 (1989); Hewitt v. Helms, 459 U.S. 460, 466 (1983).

7  Petitioner does not have a protected liberty interest in behavioral credits or in freedom from

8  segregated housing under the due process clause itself.  See Sandin v. Connor, 515 U.S. 472,

9  478-79 (1995); Wolff v. McDonnell, 418 U.S. 539, 557 (1974).  Thus, he must show that his

10  liberty interest arises under state law.

11          A liberty interest arises under state law when an inmate is subjected to restrictions

12  that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents

13  of prison life."  Sandin, 515 U.S. at 484.  The loss of credits "inevitably affect[s] the

14  duration of [petitioner's] sentence."  See id. at 487.  Thus, the loss of credits involves a right of

15  "real substance," which implicates petitioner's liberty interest under the due process clause.  See

16  Gotcher v. Wood, 66 F.3d 1097, 1100 (9th Cir. 1995), vacated and remanded on other grounds,

17  520 U.S. 1238 (1997) (loss of good time credits implicates a liberty interest under Sandin); see

18  also Wolff, 418 U.S. at 557 (a prisoner's interest in good time credit had "real substance" and

19  thus entitled him to the protection of the due process clause); Cal. Penal Code § 2932(a)

20  (providing that credits may be forfeited if a prisoner is found guilty of a serious act of

21  misconduct); Cal. Code Regs. tit. 15, § 3323 (same).  Based on the above authorities, the court

22  concludes that petitioner has a liberty interest in the proper restoration of his behavioral credits.

23          On May 22, 2007, pursuant to court order, respondent filed a supplemental

24  answer, in which he argues that prison staff properly restored to petitioner his 360-day loss of

25  behavioral credits and accurately recalculated his release date after the rules violation report was

26  reissued and reheard.  As an exhibit to the supplemental answer, respondents have filed the May

1   17, 2007 declaration of M. Atkins, case records supervisor at Corcoran State Prison, in which he

2   explains in detail petitioner's credit status history from the issuance of the rules violation report

3   on April 7, 2001, through the date the declaration was executed.  (Supplemental Answer, Ex. 3.)

4   Mr. Atkins explains in his declaration how petitioner's minimum eligible release date has been

5   recalculated in response to changes in petitioner's credit status and the deduction and restoration

6   of time credits over time, including the loss and eventual restoration of the 360 day credit loss

7   imposed as a result of the first disciplinary hearing on the April 7, 2001 rules violation report.

8   (Id.)  Although he was given the opportunity to do so, petitioner did not file a response to the

9   supplemental answer.

10          Petitioner's arguments contained in the instant petition fail to convince this court

11  that respondent's analysis and calculation of his time credits is erroneous.  It appears from the

12  exhibits filed by respondent that petitioner's credits were properly restored to him after the first

13  disciplinary conviction was set aside and that his release date has subsequently been correctly

14  calculated.[2]  Accordingly, petitioner is not entitled to relief on this claim.

15          B.  June 26, 2001 Disciplinary Decision

16          Petitioner advances several arguments challenging the June 26, 2001 disciplinary

17  decision finding him guilty of assault upon a staff member without serious injury.[3]  Petitioner

18  first claims that a written statement from Jose Garcia, a fellow inmate who allegedly witnessed

19  the events giving rise to petitioner's disciplinary conviction, was "excepted" (sic) by the hearing

20

21          [2]  As explained by Mr. Atkins, petitioner's mistaken belief that his 360-day loss of
        behavioral credits was not properly restored and that his release date was not accurately

22      recalculated after this restoration, stems from two circumstances.  (Supplemental Answer, Ex. 3
        at 2.)  First, when petitioner was assessed a 360-day loss of behavioral time credits, only 240

23      days were added to his release date because at the time he was eligible to receive one day of
        credit for every two days served.  (Id.)  Second, as a result of his subsequent rule violation reports

24      petitioner for a time became ineligible to receive one-third credits which ultimately resulted in
        the adding of forty days to his release date. (Id.)

25
            [3]  Petitioner contends that the hearing took place on July 4, 2001.  (Traverse at 9.)

26      However, the documentary evidence before the court indicates that the hearing took place on
        June 26, 2001.  (Traverse, Attachment A.)

1   officer but not "noted or used" in the officer's findings.  (Am. Pet. at 5.)  Second, petitioner

2   claims that prison authorities improperly failed to address on appeal "the fact my witnesses

3   declaration and affidavit was not excepted (sic) or he allowed to attend the hearing."  (Id.)  Third,

4   petitioner claims that the hearing officer omitted from his final report the "cross examination

5   questioning of Ms. Miller" and the fact that petitioner requested a witness (presumably Mr.

6   Garcia) at the hearing.  (Id.)  In support of these claims, petitioner has filed as an exhibit a

7   declaration from inmate Jose Garcia, dated May 23, 2001, wherein Mr. Garcia states that: (1) he

8   heard Ms. Miller threaten to charge petitioner with assault for throwing "those pills;" (2) he

9   looked down and saw a pill in front of his cell door; and (3) petitioner told Ms. Miller he did not

10  "throw the pills or hit you" and that Miller responded, "you don't have a cellie right" and then

11  walked away.  (Attach, first "exhibit B").

12          In his traverse, petitioner describes his claim as: "whether or not I was denied due

13  process in the hearing when the hearing officer excepted (sic) but did not use or note this

14  submitted evidence in his finding upon disposition of the charges and why didn't the Institution

15  resolve this issue before denying my appeal and forcing me to a 3rd level review that they knew

16  would be upheld because the Warden's signature is signed to the appeal."  (Traverse at 15.)

17  Petitioner also describes the "heart of [his] issues" as follows: "the inmate in cell #127 witnessed

18  this and in fact heard the conversation and wrote a affidavit and declaration which the hearing

19  officer excepted (sic) but never used it in the rational trier of evidence in his finding of guilty."

20  (Id. at 13.)  Petitioner concludes, "I had the right to present documentary evidence, and the

21  hearing officer had a responsibility to consider that evidence in its determination of the findings."

22  (Id. at 17.)

23          This court will construe petitioner's allegations as a claim that he was denied the

24  right to present evidence in his defense because the declaration of inmate Jose Garcia was not

25  given proper weight at petitioner's disciplinary hearing.  Petitioner apparently concedes that the

26  Garcia declaration was physically accepted as part of the evidence at his disciplinary hearing, but

1  argues that because it did not lead to his acquittal and was not mentioned in the record of the

2  proceedings, he did not receive a fair hearing.[4]  Petitioner also claims that the record of the

3  hearing omits reference to some of his own testimony and some of the questions asked of Officer

4  Miller.

5          It is well established that inmates subjected to disciplinary action are entitled to

6  certain procedural protections under the Due Process Clause but are not entitled to the full

7  panoply of rights afforded to criminal defendants.  Wolff, 418 U.S. at 556; see also

8  Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549 F.2d 1293,

9  1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least

10  amount of due process along the prosecution continuum).  An inmate is entitled to advance

11  written notice of the charge against him as well as a written statement of the evidence relied upon

12  by prison officials and the reasons for any disciplinary action taken.  See Wolff, 418 U.S. at 563.

13  In the disciplinary hearing context, an inmate does not have a right to counsel, retained or

14  appointed, although illiterate inmates are entitled to assistance.  Id. at 570.

15          An inmate has a right to a hearing at which he may "call witnesses and present

16  documentary evidence in his defense when permitting him to do so will not be unduly hazardous

17  to institutional safety or correctional goals."  Wolff, 418 U.S. at 566. See also Ponte v. Real, 471

18  U.S. 491, 495 (1984).  The right to call witnesses is subject to the "mutual accommodation

19  between institutional needs and objectives and the provisions of the Constitution."  Baxter v.

20  Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff, 418 U.S. at 556).  See also Serrano v.

21  Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir.

22  1989). "Prison officials must have the necessary discretion to keep the hearing within reasonable

23  limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as

24

25          [4]  Although it is not apparent from the record that petitioner asked to present evidence
26  from inmate Garcia, the court will assume that he did.  In any event, respondent does not
    specifically deny that petitioner presented evidence from inmate Garcia.

1   well as to limit access to other inmates to collect statements or to compile other documentary

2   evidence." Wolff, 418 U.S. at 566.   Prison officials may, but are not required to, explain their

3   reasons limiting an inmate's efforts to defend himself.  Ponte, 471 U.S. at 497.  Should prison

4   officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or

5   later in court proceedings.  Id.  See also Bostic, 884 F.2d at 1274 (burden is on prison officials to

6   provide justifications for refusal).  So long as those reasons "are logically related to preventing

7   undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due

8   process requirements as outlined in Wolff." Ponte, 471 U.S. at 497.   However, as a general rule,

9   inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison

10  disciplinary hearings.  Id. at 510 (Marshall, J., dissenting).

11          The disciplinary hearing must be conducted by a person or body that is

12  "sufficiently impartial to satisfy the Due Process Clause." Wolff, 418 U.S. at 571.  The decision

13  rendered on a disciplinary charge must be supported by "some evidence" in the record.  Hill, 472

14  U.S. at 455.  A finding of guilt cannot be "without support" or "arbitrary."  Id. at 457.  The

15  "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any

16  reliable evidence in the record that could support the conclusion reached by the fact finder.

17  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v.

18  Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Barnsworth v. Gunderson, 179 F.3d 771,

19  773 (9th Cir. 1990);  Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).  Determining

20  whether this standard is satisfied does not require examination of the entire record, independent

21  assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint v. McCarthy,

22  801 F.2d 1080, 1105 (9th Cir. 1986).  Indeed, in examining the record, a court is not to make its

23  own assessment of the credibility of witnesses or re-weigh the evidence.  Hill, 472 U.S. at 455.

24  The question is whether there is any reliable evidence in the record that could support the

25  decision reached.  Toussaint, 801 F.2d at 1105.

26  /////

1    Where a protected liberty interest exists, the requirements imposed by the Due

2  Process Clause are "dependent upon the particular situation being examined." Hewitt, 459 U.S.

3  at 472.  The process due is such procedural protection as may be "necessary to ensure that the

4  decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228

5  (1990).  In identifying the safeguards required in the context of disciplinary proceedings, courts

6  must remember "the legitimate institutional needs of assuring the safety of inmates and

7  prisoners" and avoid "burdensome administrative requirements that might be susceptible to

8  manipulation." Hill, 472 U.S. at 454-55.  The requirements of due process in the prison context

9  involve a balancing of inmate rights and institutional security concerns and broad discretion must

10 be accorded to prison officials. Wolff, 418 U.S. at 560-63.

11    This court concludes that petitioner received all the process that was due in

12 connection with the disciplinary hearing on the charge of assault upon a staff member without

13 serious injury.  Petitioner received advance written notice of the charges against him as well as a

14 written statement of the evidence relied upon by prison officials and the reasons for any

15 disciplinary action taken. See Wolff, 418 U.S. at 563.  Petitioner was allowed to present

16 evidence in his defense, including the declaration of inmate Garcia. See id.  The findings of the

17 disciplinary board were supported by "some evidence" that carried "indicia of reliability."

18 Specifically, petitioner was convicted based on the testimony of Officer Miller and petitioner's

19 partial admission that he threw pills.  Petitioner does not have a constitutional right to a decision

20 in his favor or a decision based on the declaration of inmate Garcia.  Petitioner also does not

21 have a constitutional right to a written record of the proceedings which contains all questions

22 asked of each witness, or the complete testimony of any particular witness.

23    Petitioner also claims that his prison appeals of this disciplinary conviction were

24 not appropriately addressed.  Specifically, petitioner claims that he was not allowed a review of

25 his claims at the "informal level" or the "first level" of review and that the appellate decision at

26 /////

15

1  the second and third levels failed to address his claim concerning his being denied the ability to

2  present evidence in his defense.  (Traverse at 12-16.)

3          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

4  some transgression of federal law binding on the state courts.  Middleton, 768 F.2d at 1085.

5  Petitioner's claims regarding his prison appeals is not grounded in federal law and is therefore

6  not cognizable in this federal habeas corpus proceeding.  Petitioner has no federal constitutional

7  right to have his prison appeals addressed in any particular manner.  Cf. Franzen v. Brinkman,

8  877 F.2d 26 (9th Cir. 1989) (errors in a state post-conviction review proceeding are not

9  addressable through federal habeas corpus).

10 V.  Respondent's Request for Judicial Notice

11          On March 1, 2004, respondent filed a "Request for Judicial Notice in Support of

12 Answer to Petition for a Writ of Habeas Corpus."  Therein, respondent requests that the court

13 take judicial notice of Exhibits 1 - 10, lodged in support of the answer.  This court has reviewed

14 Exhibits 1 - 10 in connection with its analysis of petitioner's claims.  Accordingly, respondent's

15 request for judicial notice will be granted.

16 VI.  Petitioner's Motion for Judgment

17          On October 14, 2005, petitioner filed a document entitled "Motion for Judgment

18 as a Matter of Law Rule 50-291."  Therein, petitioner requests that the court grant judgment in

19 his favor on the same claims raised in the instant petition for a writ of habeas corpus.  In light of

20 this court's recommended disposition of petitioner's habeas petition, petitioner's motion for

21 judgment will be denied.

22          Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

23          1.  Respondent's March 1, 2004 request for judicial notice is granted; and

24          2.  Petitioner's October 14, 2005 motion for judgment as a matter of law is

25 denied.

26 /////

1         IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

2 habeas corpus be denied.

3         These findings and recommendations are submitted to the United States District

4 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5 days after being served with these findings and recommendations, any party may file written

6 objections with the court and serve a copy on all parties.  Such a document should be captioned

7 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8 shall be served and filed within ten days after service of the objections.  The parties are advised

9 that failure to file objections within the specified time may waive the right to appeal the District

10 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11 DATED: July 9, 2007.

12

13                      _Dale A. Drozd_____

14                      DALE A. DROZD
                     UNITED STATES MAGISTRATE JUDGE

15 DAD:8:lyons1127.hc

16

17

18

19

20

21

22

23

24

25

26